USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/22/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REBECCA MARLOWE, *Individually and as Executrix of the Estate of Erin Kelly*,

                Plaintiff,

-against-

WEBMD, LLC and NEW YORK LIFE GROUP INSURANCE COMPANY OF NY,

                Defendants.

22-cv-3284 (MKV)

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

---

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiff Rebecca Marlowe asserts claims against Defendants WebMD, LLC ("WebMD") and New York Life Group Insurance Company of New York ("New York Life") under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1000 *et seq.* ("ERISA"), seeking to recover life insurance benefits payable on the life of her late husband under WebMD's Insurance Plan, which is insured by New York Life. WebMD now seeks dismissal of the breach of fiduciary claim against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is denied.

## BACKGROUND[1]

*Mr. Kelly's Employment with WebMD*

      Erin Kelly ("Mr. Kelly") began working for WebMD in 2001 as a Senior Editorial Director for the Company's internet publication, Medscape. Compl. ¶ 23. At the start of his employment, Mr. Kelly became covered under WebMD's Insurance Plan ("the Plan") for Basic Life benefits, which all eligible employees receive automatically, by virtue of employment in a covered class.

---

[1] The facts as stated herein are drawn from Plaintiff's Second Amended Complaint [ECF No. 31] ("Compl." or "the Complaint") and are assumed to be true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Compl. ¶¶ 6, 23.  He did not elect to enroll at that time in the Plan's premium Voluntary Life benefits available for an additional cost.  Compl. ¶¶ 23, 29.

Approximately a decade later, in 2012 Mr. Kelly was tragically diagnosed with cancer and was told that he had only six to twenty-four months to live.  Compl. ¶ 25.  Mr. Kelly promptly within weeks informed his supervisor of his diagnosis and prognosis.  Compl. ¶ 25.  His supervisor, in turn, informed WebMD's Human Resources ("HR") department.  Compl. ¶ 26.  Around that time, Mr. Kelly informed the HR department of his desire to increase his life insurance coverage to the maximum allowable coverage under the Plan in order to protect his spouse and children.  Compl. ¶ 27.  Mr. Kelly requested Plan documents from WebMD for all his benefit plans, including the life insurance Plan.  Compl. ¶ 27.

*The Plan Policy's Terms*

Coverage under the Plan is provided through a group life insurance policy issued by New York Life to WebMD to insure the Plan participants.  Compl. ¶ 17.  As Plan Administrator, WebMD administers Plan enrollment and submission of claims.  Compl. ¶ 18.  Additionally, WebMD, through its employees, communicates with Plan participants to provide and submit required information for enrollment in the Plan.  Compl. ¶ 19.  New York Life receives, processes, and determines all such enrollment requests.  Compl. ¶ 19.  Under the Plan's terms, New York Life is the claim decision-making administrator for benefits proved under the Plan.  Compl. ¶ 20.

The applicable Policy ("the Policy") provides that all eligible employees are covered for a Basic Life insurance benefit of two times their annual compensation on a *guaranteed* issue basis by virtue of employment in a covered class.  Compl. ¶ 21.  The Policy also provides that eligible employees may elect Voluntary Life Insurance benefits up to five times their annual compensation, to a maximum of $500,000, without evidence of insurability.  Compl. ¶ 22.  To do so, employees who are "currently insured under the Policy," but did not elect Voluntary Life insurance at the time

2

of hiring, can increase coverage during annual open enrollment periods by adding "Guaranteed Issue" insurance (*i.e.*, without evidence of insurability)—one Benefit Level (*i.e.*, multiple of annual salary) at a time—up to three times their salary per open enrollment period. Compl. ¶ 22. Specifically, the "Annual Re-Enrollment" section of the Policy provides that:

> During an Annual Re-Enrollment Period or within 31 days of a Life Status Change, *an Employee currently insured under the Policy may increase his or her Voluntary Life Insurance Benefits by a Benefit Level*, up to the Guaranteed Issue Amount of the lesser of 3 times Annual Compensation rounded to the next higher $1,000, if not already a multiple thereof or $500,000, *without satisfying the Insurability Requirement*. An Employee may increase coverage by an amount in excess of this amount only if he or she satisfies the Insurability Requirement.

Compl. ¶ 22 (emphasis added).[2] Under the Policy, the maximum Voluntary Life benefits an employee could elect is five times his or her annual compensation up to $500,000. Compl. ¶ 22.

*Mr. Kelly Seeks to Increase his Coverage*

In 2012, after Mr. Kelly's informed WebMD's HR department of his diagnosis and his desire to increase his life insurance coverage to the maximum amount, WebMD advised Mr. Kelly that he was ineligible to obtain Voluntary Life Insurance benefits without evidence of insurability. Compl. ¶ 29. Mr. Kelly clearly was unable to satisfy that requirement due to his cancer diagnosis. Compl. ¶ 29.

Mr. Kelly outlived his dire prognosis and remained employed by Medscape for the next six years. Compl. ¶ 2. During that time, Mr. Kelly repeatedly sought to obtain Voluntary Life Insurance benefits. Compl. ¶ 29. Each time, WebMD's HR department advised Mr. Kelly that he was ineligible to enroll without evidence of insurability. Compl. ¶ 29. Moreover, WebMD did not provide Mr. Kelly with the Policy documents he requested until late 2018 when it finally mailed him a copy. Compl. ¶ 29.

---

[2] The emphasized portion of the Policy is the language at issue in this claim.

3

In November 2018, during the Plan's annual open enrollment period, Mr. Kelly suffered a period of acute illness. Compl. ¶ 30. As a result, WebMD granted Mr. Kelly an extension from November to December 2018 to allow him additional time to complete his open enrollment for 2019 benefits. Compl. ¶ 30. When Mr. Kelly was able to return to work, he (by phone) and his wife—the Plaintiff here—(in person), met with WebMD's HR department to complete his open enrollment for 2019. Compl. ¶ 31. At that meeting, Mr. Kelly again advised HR that he wished to enroll in the maximum Voluntary Life coverage. Compl. ¶ 31. Plaintiff alleges that, at that meeting, HR advised Mr. Kelly that he was, in fact, entitled to enroll in Voluntary Life benefits for up to five times his annual compensation, totaling $430,000, *without* evidence of insurability. Compl. ¶ 31. The information that Mr. Kelly had received for the preceding six years was, apparently, incorrect. Compl. ¶ 29. HR then advised Mr. Kelly and Plaintiff that it had entered in the benefits system his election of $430,000 in Voluntary Life insurance coverage. Compl. ¶ 31.

Mr. Kelly remained on active employment status with Medscape throughout the remainder of December 2018. Compl. ¶ 34. Sadly, on January 1, 2019, Mr. Kelly passed away. Compl. ¶ 34.

*Non-Payment of Benefits*

Less than a month after Mr. Kelly's passing, Plaintiff submitted a claim to WebMD HR for Mr. Kelly's Basic Life coverage of $172,000, which represented two times his annual compensation at the date of his death. Compl. ¶ 35. She also simultaneously submitted a separate claim to WebMD HR for Mr. Kelly's Voluntary Life coverage of $430,000, which represented five times his annual compensation at the date of his death. Compl. ¶ 35. The two claims reflected the total amount to which Mr. Kelly and Plaintiff had been advised during the December 2018 meeting with HR he was entitled—without evidence of insurability. Compl. ¶ 31.

New York Life subsequently paid Mr. Kelly's Basic Life benefit of $172,000, but it never paid or responded to Plaintiff's claim for Voluntary Life benefits. Compl. ¶¶ 38–39. Indeed,

neither WebMD nor any other entity or person acting on behalf of the Plan advised Plaintiff that apparently her claim for Voluntary Life benefits had not been submitted to New York Life as the insurer contends. Compl. ¶ 39. Rather, WebMD has since advised Plaintiff that her Voluntary Life benefits claim is "pending." Compl. ¶ 39.

## PROCEDURAL HISTORY

Plaintiff filed this action in New York state court, bringing claims pursuant to Sections 502(a)(1)(B) and (a)(3) of ERISA seeking to recover life insurance benefits under the Plan payable on the life of her late husband. Specifically, Plaintiff brings a failure to pay claim against New York Life pursuant to Section 502(a)(1)(B) for $86,000 (one times his annual compensation), reflecting Mr. Kelly's submission of enrollment election for Voluntary Life benefits in December 2018. Plaintiff also brings breach of fiduciary duties claims against New York Life and WebMD pursuant to Section 502(a)(3) for $258,000 (three times his annual compensation), less any payment made with respect to the failure to pay claim, reflecting the Voluntary Life benefit levels for which Mr. Kelly missed the opportunity to enroll[3] during the three years he was informed by WebMD that he could not enroll without evidence of insurability.

Defendants removed the case to federal court. [ECF No. 1]. Since filing her original complaint, Plaintiff filed a First Amended Complaint [ECF No. 19] and then a Second Amended Complaint ("the Complaint") [ECF No. 31], which now serves as the operative complaint in this action. WebMD has moved to dismiss the sole breach of fiduciary claim plead against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), [ECF No. 32], submitting a

---

[3] Plaintiff's breach of fiduciary claim is only for $258,000 and not $430,000, which would reflect the total amount Mr. Kelly would have been entitled to for the *five* years he allegedly could have enrolled in Voluntary Life benefits had he not been misadvised by WebMD. Plaintiff concedes, in her briefing, that she only seeks to recover for three years' worth of Voluntary Life levels because of the three-year statute of limitations bar from recovery for earlier years. Plaintiff's Memorandum in Opposition at 16.

Memorandum of Law in Support in support of its motion. [ECF No. 34]. Plaintiff opposed the motion [ECF No. 39], and Defendant replied [ECF No. 41].

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is not required to provide "detailed factual allegations" in the complaint. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, however, a plaintiff must assert "more than labels and conclusions." *Id.* Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* When applying this standard, a court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## ANALYSIS

**I.     The Court Relies on Only the Second Amended Complaint
        and the Policy Documents for Purposes of This Motion**

As a threshold matter, the parties disagree about which documents the Court may properly consider for purposes of this motion. Both parties agree that, in addition to the Complaint, the Policy and the two Certificates of Insurance that serve as the Policy's Summary Plan Description ("collectively "the Plan Documents") should be considered. However, WebMD contends that the Court may additionally rely on an Employee Guide that it annually distributes to its employees, and which it insists "simplifies for employees into plain English what the voluminous legal plan

documents require for different coverages."[4]  *See* WebMD Reply Brief ("Reply Br.") at 1. WebMD argues that the Employee Guide makes clear that "new hires could elect *as of right* [*i.e.*, without evidence of insurability] additional Voluntary Life coverage, [] *only* at the time they first began employment."  WebMD Memorandum of Law ("Def. Memo") at 2 (citing Mitchell Decl. Ex. 3 ("Employee Guide") at 16).  According to WebMD, if that election is not made *upon hire*, the insurer would "*always* require [evidence of insurability]" to add Voluntary Life benefits later. Employee Guide at 16.  Thus, WedMD argues that Mr. Kelly, who annually received this Guide, would be aware that without providing evidence of insurability, he was ineligible for Voluntary Life benefits, which he did not select upon hire.

It is well-settled that when considering a motion to dismiss for failure to state a claim, the court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).  For documents to be incorporated by reference, "the complaint must make a clear, definite, and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)); *see also System1 Rsch. Ltd. v.*

---

[4] WebMD also attempts to use a "pop-up screen" from its own website improperly to refute the allegations in Plaintiff's Complaint.  WebMD argues that Mr. Kelly could not possibly have made the 2018 Voluntary Life benefits election with the assistance of human resources because "all ERISA elections are made by employees directly on their computers, and an election by an existing employee who previously did not have it to add Voluntary Life triggers a *pop-up screen* that reiterates [the evidence of insurability] condition spelled out in the Employee Guide."  *See* WebMD Memorandum of Law ("Def. Memo") at 2 n.4.  On a motion to dismiss, Plaintiffs allegations must be accepted as true, *Iqbal*, 556 U.S. at 678, and any dispute or refutation by WebMD plays no role in the Court's analysis.  Moreover, WebMD cannot reasonably argue that a "pop-up screen" on its *own* enrollment website is "integral" to the Complaint. In fact, WebMD concedes that the "pop-up screen" is "perhaps beyond the scope of the pleading."  As such, the Court does not consider it for purposes of this motion.

*System1 LLC*, No. 21 CIV. 8029, 2022 WL 4585735, at *1 (S.D.N.Y. 2022); *Stifel, Nicolaus & Co., Inc. v. Shift Techs., Inc.*, No. 21 CIV. 4135, 2022 WL 3648145, at *1 n.2 (S.D.N.Y. 2022).

Where a document is not incorporated by reference, the court may nevertheless consider it on a motion to dismiss where the complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Foreman*, 19 F.4th at 106 (quoting *DiFolco*, 622 F.3d at 111). A document is properly treated as integral to the complaint if the plaintiff relied on the terms and effect of a document in drafting the complaint. *Id*. at 106. "Mere notice or possession is not enough." *Id*. (emphasis added) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). Moreover, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the [] accuracy of the document." *DiFolco*, 622 F.3d at 111 (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

The Employee Guide is neither incorporated into the Complaint by reference nor "integral" to the Complaint. First, Plaintiff never once references the Employee Guide in the entirety of her Complaint. Thus, while Plaintiff concedes that she makes "clear, definite, and substantial reference" to the Plan Documents, there is no such reference to the Employee Guide. *DeLuca*, 695 F. Supp. 2d at 60. In fact, the Policy, which is incorporated by reference and therefore properly considered on this motion, has an express integration clause which provides that "[t]he *Policy*, the application of the Policyholder [], the Policyholder endorsements, riders, *and certificate* and attached papers constitute the entire contract between the parties." Mitchell Declaration, Ex. 2 ("Policy") at 24. In other words, the Policy and certificates—*i.e.*, the Summary Plan Description—constitute the contract between the parties. The Employee Guide is not part of the contract and is not a document incorporated by reference.

Nor is the Employee Guide "integral" to the Complaint. In fact, Plaintiffs argue—and WebMD does not deny—that the Employee Guide is authored *by* WebMD, not New York Life.

8

Plaintiff's Complaint alleges, *see* Compl. ¶¶ 17, 20, and WebMD repeatedly admits, *see e.g.* Def. Memo at 14, that "WebMD d[oes] not have discretionary authority to interpret the New York Life Policy."[5] It is difficult to understand how WebMD can reasonably reconcile its position that it has no authority to interpret the Policy, with its urging that the Court should consider, in determining whether Plaintiff has stated a claim, a document WebMD authored to explain that Policy, because it is somehow "integral" to Plaintiff's Complaint.

The Employee Guide may ultimately be relevant on summary judgment or at a later phase of the case. However, to consider the document at this juncture would be inappropriate. Accordingly, the Court considers only the Complaint and the Plan Documents in connection with WebMD's motion to dismiss.

## II.     Exhaustion of Remedies

As an initial matter, WebMD argues that Plaintiff has failed to allege that she exhausted her administrative remedies before bringing this lawsuit. Indeed, the Second Circuit "has recognized the firmly established policy favoring exhaustion of administrative remedies in ERISA cases." *See e.g.*, *Novella v. Westchester Cnty.*, 661 F.3d 128, 135 (2d Cir. 2011). WebMD points to an appeal process laid out in the Policy, which states that New York Life Group is the fiduciary responsible for deciding any appeals of *denied claims*. Policy at 28. WebMD argues that the New York Life Policy sets out a clear process that should be filed to challenge *denial* of coverage. Policy at 27–29. According to WebMD, because "Plaintiff does not plead that she exhausted *this*

---

[5] In addition to the Employee Guide, WebMD argues that "New York Life's Answer to the Complaint says that under its [P]olicy, [Mr. Kelly] was required to satisfy the [evidence of insurability] condition to apply for Voluntary Life" benefits. *See* Reply Br. At 4. Co-defendant New York Life's pleading is not appropriately considered on a Rule 12(b) motion to dismiss. By its very definition, an "Answer" to a Complaint cannot possibly be a document incorporated into, or on which, the preceding Complaint relies. *Foreman*, 19 F.4th at 106.

9

remedy before filing her case," the motion to dismiss must be granted. Def. Memo at 18. WebMD's position, however, completely overlooks the substance of Plaintiff's allegations.

According to Plaintiff's allegations, there are no "denied claims" to appeal in the first place, *see* Compl. ¶ 38–39, since Mr. Kelly was purportedly never enrolled for benefits due to WebMD's breach of fiduciary duty in giving him incorrect information about his eligibility. Plaintiff expressly claims that WebMD's alleged misinformation regarding Mr. Kelly's Voluntary Life enrollment eligibility "deprived him of his opportunity to [ever] enroll . . . ." Compl. ¶ 49. In such circumstances, the Policy's administrative remedy for denial of a claim is inapplicable. WebMD points to no remedial process contained in the Policy which could redress Mr. Kelly's missed enrollment opportunity. Compl. ¶ 53. In short, there was no relevant remedy in the Plan Documents that Plaintiff was required to exhaust.

### III.   Plaintiff May Seek to Recover Money Damages as a Form of Other Equitable Relief Under ERISA

WebMD seeks to dismiss the breach of fiduciary claim against it, arguing that Plaintiff does not invoke any specific provision under ERISA that entitles her to recover money damages from WebMD. Plaintiff's Complaint, however, specifically invokes Section 502(a)(3). *See* Compl. ¶ 14. Therefore, the Court considers whether Plaintiff may properly state a claim for money damages under Section 502(a)(3) for WebMD's alleged breach of its fiduciary duties.

Section 502(a)(3) states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other *appropriate equitable relief* (i) to redress such violations." WebMD apparently concedes that Plaintiff satisfies most of this provision's requirements, namely, that Mr. Kelly is a plan "beneficiar[y]," and that Plaintiff is suing for "relief" to "redress" a violation of a "provision of this title," specifically Section 409(a), which expressly provides for

"Liability for Breach of Fiduciary Duty." *See Varity Corp. v. Howe*, 516 U.S. 489, 510 (1996). WebMD argues, however, that Plaintiff fails to state a claim since this lawsuit does not seek "*equitable* relief" under Section 502(a)(3) because Plaintiff seeks money damages from WebMD.

In *Varity Corporation v. Howe*, the Supreme Court held that "[t]he words of subsection [502(a)](3)—'appropriate equitable relief to redress any act or practice which violates any provision of this title'—are broad enough to cover *individual relief* for breach of a fiduciary obligation." *Id.* (citing 29 U.S.C.A. § 1132(a)(3)). "To that end, ERISA specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims . . . that run[] directly to the injured beneficiary." *Id.* at 512. The Supreme Court subsequently made clear in *CIGNA Corporation v. Amara*, 563 U.S. 421, 444 (2011), that an ERISA fiduciary can be "surcharged" or ordered to pay money damages pursuant to Section 502(a)(3) as "other appropriate equitable relief." *See also Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 102 (2d Cir. 2020). The Second Circuit has clarified that "where, as here, a plan participant brings suit against a plan fiduciary . . . for breach of fiduciary duty relating to the terms of a plan," "monetary compensation for a loss resulting from a [fiduciary's] breach of duty . . . constitutes equitable relief under Section 502(a)(3)." *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015) (internal quotations omitted).

It is indeed true, as WebMD argues, that Plaintiff has brought a separate claim against New York Life under Section 502(a)(1)(B) seeking money damages. The claim against New York Life Group in no way affects the legal sufficiency of a claim against WebMD. Plaintiff is, of course, entitled to bring alternative claims. *See New York State Psychiatric Ass'n*, 798 F.3d at 134. Moreover, at the pleading stage, it is not at all clear that, should she prevail, Plaintiff can obtain full relief from New York Life. In fact, Plaintiff's claim against New York Life pursuant to Section 502(a)(1)(B) seeks only the amount Mr. Kelly was owed after allegedly enrolling in Voluntary

Life for the 2019 year, and as such, would *not* sufficiently redress the three years Mr. Kelly did not elect to enroll in Voluntary Benefits because WebMD had told him that he would need to provide evidence of insurability. Accordingly, Plaintiff's claim against WebMD "seeks true equitable relief" reflecting purported "losses flowing from [WebMD's alleged] breach of fiduciary duty." *See New York State Psychiatric Ass'n*, 798 F.3d at 135. Thus, the remedy of surcharge, as recognized by the Supreme Court in *Amara*, 563 U.S. at 444, is available to her under Section 502(a)(3). *Id*.

### IV. Plaintiff has Plead a Cognizable Breach of Fiduciary Duty Claim

To establish a breach of fiduciary duty based on alleged misrepresentations about benefits under an ERISA plan, Plaintiff must show (1) defendants were acting in a fiduciary capacity, and that (2) they made a material misrepresentation or omission (3) on which plaintiff relied to her detriment. *Watson v. Consol. Edison*, 645 F. Supp. 2d 291, 297 (S.D.N.Y. 2009), *aff'd sub nom. Watson v. Consol. Edison*, 374 F. App'x 159 (2d Cir. 2010). For a misrepresentation to be material in an ERISA context, there must be a "substantial likelihood that [it] would mislead a reasonable employee in making an adequately informed decision." *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 123 (2d Cir.1997).

#### A. Plaintiff Plausibly Alleges that WebMD Acted in a Fiduciary Capacity

The Supreme Court has established the framework for consideration of Section 502(a)(3) claims such as the ones Plaintiff asserts here. "In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the Defendant] was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (emphasis added); *In re DeRogatis*, 904 F.3d 174, 191 (2d Cir. 2018). Generally, a "person is a fiduciary with respect to a plan, and therefore subject to

12

ERISA fiduciary duties, to the extent that he or she exercises any discretionary authority or discretionary control respecting management of the plan, or has any discretionary authority or discretionary responsibility in the administration of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 510 (1996) (internal quotation marks omitted); *see also DeRogatis*, 904 F.3d at 191.

In *Varity Corporation*, the Supreme Court recognized that plan administrators also act as fiduciaries when they "answer[] beneficiaries' questions about the meaning of the terms of a plan so that those beneficiaries can more easily obtain the plan's benefits." *DeRogatis*, 904 F.3d at 191 (citing *Varity Corp.*, 516 U.S. at 502–03). In determining that plan administrators act as fiduciaries when sharing such information, the Supreme Court observed that ERISA "requires administrators to give beneficiaries certain information about the plan," and that "administrators, as part of their administrative responsibilities, frequently offer beneficiaries more than the minimum information that the statute requires." *Id*. (citing *Varity Corp.*, 516 U.S. at 502–03). The Second Circuit explained that administrators perform a fiduciary function when they provide information to help "beneficiaries to make [] informed choice[s]" about the plan, whether that information concerns the benefits currently available under the plan, or the ongoing integrity of the plan itself. *Id*. at 192 (citing *Varity Corp.*, 516 U.S. at 502–03). The Circuit further instructed that "fiduciary function encompasses communications conducted by issuing written plan materials like summary plan descriptions, as well as through members' individualized consultations with benefits counselors." *Id*.; *Bouboulis v. Transp. Workers Union*, 442 F.3d 55, 58, 66 (2d Cir. 2006).

Plaintiff alleges that WebMD acted as a fiduciary in several respects.

### i. Advice Regarding Plan Eligibility

First, Plaintiff claims that WebMD was acting as a fiduciary when it advised Mr. Kelly that he was ineligible to enroll in Voluntary Life benefits without evidence of insurability. Compl. ¶ 47. WebMD moves to dismiss Plaintiff's breach of fiduciary claim, arguing that because it did

not have discretionary authority to interpret the Policy, it was "simply a conduit for that information" and not a fiduciary. Def. Memo at 15.

The ruling from the Supreme Court in *Varity Corporation* and the Second Circuit in *DeRogatis* make clear that Plaintiff plausibly alleges that WebMD was acting as a fiduciary when it consulted with and advised Mr. Kelly regarding his eligibility for Voluntary Life benefits. Specifically, Plaintiff alleges that, between 2014 and 2018, Mr. Kelly was repeatedly advised by WebMD's HR department that he was ineligible for Voluntary Life benefits without evidence of insurability because he did not select that option as a new hire. Compl. ¶ 29. Moreover, Plaintiff alleges that she and Mr. Kelly personally consulted with WebMD's HR department in December 2018 to discuss, in detail, his rights under the Plan. Compl. ¶ 31. At that point, the HR employee expressly advised him that he was, indeed, eligible for Voluntary Life benefits. Compl. ¶ 31.

Each open enrollment period, Mr. Kelly's benefits election was allegedly guided by WebMD's counseling. The Second Circuit has ruled that "administrators perform a fiduciary function when they provide information to help "beneficiaries to make [] informed choice[s]." *DeRogatis*, 904 F.3d at 191. Thus, Plaintiff's allegations that WebMD provided advice to Mr. Kelly about the meaning of the terms of the Plan so that he could make "informed choice[s]" on his benefits, is sufficient to plausibly allege that WebMD was acting as a fiduciary when it provided such information. *See Varity Corp.*, 516 U.S. at 510; *DeRogatis*, 904 F.3d at 191.

## ii. *Failure to Submit Benefits Election and Claim*

Plaintiff also claims that WebMD was acting as a fiduciary when it failed to submit Mr. Kelly's 2018 Voluntary Life benefits enrollment and Plaintiff's Voluntary Life claim to New York Life after Mr. Kelly's passing. Compl. ¶ 50. In the alternative, Plaintiff alleges that even if WebMD did process the 2018 enrollment request, WebMD acted as a fiduciary when it failed to advise Mr. Kelly that the enrollment was not completed. Specifically, Plaintiff alleges that

WebMD and New York Life share the fiduciary responsibility for enrolling Plan participants in coverage for which they are eligible since WebMD communicates with the Plan participants to provide and submit required information for enrollment to New York Life.  Compl. ¶ 19.

These allegations are not sufficient to support a claim that WebMD was acting in a fiduciary capacity.  The Second Circuit has ruled that when a Plan administrator's employee "performs purely ministerial functions" such as the "[m]aintenance of participants' service and employment records," "receiv[ing] employee benefit elections and record[ing] them," and the "[p]rocessing of claims," that employee does not act as a fiduciary.  *See e.g.*, *Tocker v. Kraft Foods N. Am., Inc. Ret. Plan*, 494 F. App'x 129, 131 (2d Cir. 2012); *see also* 29 C.F.R. § 2509.75-8.  In fact, the Complaint recognizes as much.  *See* Compl. ¶ 44 (WebMD's failure to forward Mr. Kelly's 2018 enrollment and Plaintiff's claim to New York Life "are administrative errors").  As such, WebMD's alleged failure to "submit" and "process" either Mr. Kelly's 2018 enrollment election or Plaintiff's claim to New York Life do not constitute fiduciary acts, and therefore, cannot support a breach of fiduciary duty claim.

### B.  Plaintiff Plausibly Alleges that WebMD Breached Its Fiduciary Duty

Plaintiff claims that WebMD breached its fiduciary obligations when it failed to provide complete and accurate information regarding Mr. Kelly's ability to enroll in Voluntary Life benefits without evidence of insurability.  Compl. ¶ 47.

Section 404 of ERISA generally defines multiple duties owed by Plan fiduciaries.[6] Particularly relevant here, the duty of prudence requires fiduciaries to "discharge [their]

---

[6] Section 404 provides that a Plan fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent

duties . . . with the care, skill, prudence, and diligence under the circumstances . . . that a prudent [person] acting in a like capacity and familiar with such matters would use." § 404(a)(1)(B). The statute "does not . . . elaborate in any detail on the duties owed by a fiduciary" beyond that text, so "courts have . . . been called upon to define the scope of a fiduciary's responsibilities." *DeRogatis*, 904 F.3d at 193 (citing *Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5, 10 (2d Cir. 1997)).

The Second Circuit has permitted plaintiffs to pursue claims for breach of the duty of prudence that are based on "a combination of unclear written plan materials and misrepresentations made by plan agents who were not themselves fiduciaries." *DeRogatis*, 904 F.3d at 193 (citing *Becker*, 120 F. 3d at 10). Stated differently, fiduciaries have a duty to "provide [participants] with complete and accurate information" about plan benefits, and "they breach that duty if their agent inadvertently misleads participants about a benefits question on which the summary plan description, too, is unclear." *Id*. at 194. The Second Circuit subsequently held that where Plan Documents clearly alert plan members about the conditions of benefits under the Plan, the Plan Documents can preclude a plan administrator from being found culpable for fiduciary breach for inadvertent misrepresentations. *Id*. at 195–96.

Plaintiff alleges that beginning in 2012, and "every time in response to his repeated questions thereafter until 2018," WebMD informed him that "he was ineligible to obtain Voluntary Life insurance coverage without proof of insurability." Compl. ¶¶ 27–28. However, at the December 2018 meeting with WebMD's HR department, Mr. Kelly and Plaintiff were informed that he was, in fact, eligible to obtain Voluntary Life insurance coverage without proof of insurability. Compl. ¶¶ 31–32. Both representations cannot be accurate since either Mr. Kelly was eligible, or he was not. As such, Plaintiff plausibly alleges that WebMD made a material

---

not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III. 29 U.S. Code § 1104.

16

misrepresentation about his benefits eligibility. Additionally, Plaintiff alleges that beginning around 2012, Mr. Kelly had requested the Plan documents from WebMD for all his benefit plans, including the life insurance Plan. However, "WebMD failed to provide him Plan documents until it mailed him a copy in or about September 2018." Compl. ¶ 29. Plaintiff therefore plausibly alleges that the Plan documents did not "clearly alert[]" Mr. Kelly to the conditions under his qualified for Voluntary Life benefits because he never received them. *Cf. DeRogatis*, 904 F.3d at 195–96. The Complaint plausibly allege a breach of fiduciary duty claim.

### C. Plaintiff Plausibly Alleges that Mr. Kelly Relied to His Detriment on WebMD's Material Misrepresentations

Plaintiff alleges that WebMD's inaccurate advice led Mr. Kelly to not enroll in Voluntary Life benefits for several years before his passing. Compl. ¶ 49. In the ERISA context, for a misrepresentation to be material, there must be a "substantial likelihood that [it] would mislead a reasonable employee in making an adequately informed decision." *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 123 (2d Cir. 1997).

Plaintiff alleges that beginning in 2012, Mr. Kelly had expressed his desire to increase his life insurance coverage to the maximum allowable coverage under the Plan, and "every time in response to his repeated questions thereafter until 2018," WebMD informed him that "he was ineligible to obtain Voluntary Life insurance coverage without proof of insurability." Compl. ¶¶ 27–28. Mr. Kelly's employer of over a decade repeatedly informed him that he was not eligible to enroll in Voluntary Life benefits without evidence of insurability, which Mr. Kelly—and WebMD—knew he could not fulfill because of his terminal diagnosis. Compl. ¶¶ 23–24; 27–28. Foreseeably, based on WebMD's guidance, Mr. Kelly did not elect to enroll in Voluntary Life benefits, thereby depriving him of significant coverage. Compl. ¶ 49. These allegations are sufficient to plausibly allege that Mr. Kelly relied to his detriment on WebMD's

material misrepresentation regarding his eligibility under the plan. *See e.g.*, *Watson*, 645 F. Supp. 2d at 297; *Becker*, 120 F.3d at 10.

## CONCLUSION

For the foregoing reasons, the motion by Defendant WebMD to dismiss Plaintiff's claim for breach of fiduciary duty to provide accurate and complete information to Mr. Kelly regarding his rights under the Plan is DENIED. The Clerk of the Court is respectfully requested to terminate docket entry 32.

**SO ORDERED.**

**Date: September 22, 2023**　　　　　　　　　　　**MARY KAY VYSKOCIL**
　　　　**New York, NY**　　　　　　　　　　　　　　**United States District Judge**